# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **ERVIN & SMITH ADVERTISING AND PUBLIC RELATIONS, INC.,** | **CASE NO. 8:08CV459** |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| **WILLIAM ERVIN, THOMAS ERVIN, LYNNETTE ROXBURGH, DAVID ZEMUNSKI, and BTM, INC., d/b/a ERVIN GROUP,** | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss (Filing No. 25), pursuant to Fed. Rules Civ. Pro. 12(b)(6) and 9(b).[1] The Court has reviewed the parties' briefs and applicable law, and concludes that the Defendants' Motion to Dismiss should be granted in part and denied in part.

## PROCEDURAL BACKGROUND

On October 13, 2008, Ervin & Smith Advertising and Public Relations, Inc., ("Ervin & Smith") filed the instant Complaint against William Ervin, Thomas Ervin, Lynnette Roxburgh, David Zemunski, and BTM, Inc., d/b/a Ervin Group ("Ervin Group"). (Filing No. 1). The allegations in the Complaint stem from conflicts surrounding the former employment relationship between the Plaintiff and William Ervin, Thomas Ervin, Lynnette

---

[1] Only Defendants William Ervin, Thomas Ervin, and BTM, Inc., d/b/a Ervin Group (collectively "Defendants") have filed the instant Motion to Dismiss. Defendants Lynnette Roxburgh and David Zemunski did not join in this Motion. Consequently, this Order has no bearing on any of the Plaintiff's claims against Lynnette Roxburgh and David Zemunski, and any and all general references to "Defendants" in this Order refer to William Ervin, Thomas Ervin, and BTM, Inc., d/b/a Ervin Group ("Ervin Group") only.

Roxburgh, and David Zemunski. Ervin & Smith is a corporation engaged in the business of advertising, marketing, and public relations. (Filing No. 1 at ¶ 11). Both Defendants William Ervin and Thomas Ervin (collectively "the Ervin Brothers") were employees of Ervin & Smith. (Filing No. 1 at ¶ 12). At the time of their resignation on July 3, 2007, Plaintiff employed the Ervin Brothers as Executive Designers working primarily on agricultural accounts. (Filing No. 1 at ¶ 12). Both William Ervin and Thomas Ervin served as officers of Ervin & Smith at one point in time during their employment with Plaintiff. (Filing No. 1 at ¶ 12). During their employment, the Ervin Brothers formed their own company, Ervin Group, as a competing advertising agency; following their resignation at Ervin & Smith, the Ervin Brothers now work solely for their company, Ervin Group. (Filing No. 1 at ¶ 33).

In the Complaint, Ervin & Smith alleges that the Ervin Brothers were employed "in positions of substantial trust and confidence." (Filing No. 1 at ¶ 15). During their course of employment, Plaintiff communicated confidential information and trade secrets to the Ervin Brothers. (Filing No. 1 at ¶ 15). In their positions with Plaintiff, the Ervin Brothers were given access to numerous Ervin & Smith customers. (Filing No. 1 at ¶ 20).

Plaintiff alleges that, in the few months before they resigned from their positions with Ervin & Smith, the Ervin Brothers e-mailed confidential, trade secret, and copyrighted documents to their home computers in order to use the information for their own personal gain. (Filing No. 1 at ¶ 26). Among many other allegations, Plaintiff alleges that the Ervin Brothers concealed certain job orders from customers, which they then diverted to their own company, Defendant Ervin Group. (Filing No. 1 at ¶ 26).

Plaintiff filed the instant Complaint, alleging twelve separate causes of action based on claims for breach of fiduciary duty, unlawful restraint of trade, violation of the Nebraska

Computer Crimes Act, fraud, deceptive trade practices, computer fraud and abuse, and violations of federal copyright law. (Filing No. 1).

On December 15, 2008, Defendants filed their 12(b)(6) Motion to Dismiss (Filing No. 25). In their Motion to Dismiss, Defendants aver that this Court should dismiss Plaintiff's Third, Fifth, Sixth, and Twelfth Claims for Relief for failure to state a claim upon which relief can be granted. Additionally, Defendants ask the Court to dismiss Plaintiff's Ninth and Tenth Claims for Relief for failure to state with particularity the facts and circumstances constituting a claim for fraud.

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require that this "statement" constitute a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. —, —, 127 S. Ct. 1955, 1965 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, — U.S. —, —, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp.*, 550 U.S. at —, 127 S. Ct. at 1964). However, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.* 550 U.S. —, 127 S. Ct. at 1965.

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Id.* Yet when ruling on a defendant's motion to dismiss, the Court must rule "on the assumption that all the allegations in the complaint are true." *Id.*

Thus, the Court must find "enough facts to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id.* When the allegations in a complaint, even when assumed to be true, cannot raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* at 1965-66.

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513, (2002). "Under Rule 9(b), a plaintiff must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *BJC Health Sys. v. Columbia Cas. Co.* 478 F.3d 908, 917 (8th Cir. 2007)(internal quotations omitted). "In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." *Id.*

"Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading. Thus, the particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel. Costner v. U.S.*, 317 F.3d 883, 888 (8th Cir. 2003). Therefore, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *BJC Health Sys.,* 478 F.3d at 917.

4

**DISCUSSION**

1.  **Plaintiff's Third Claim for Relief: Breach of Fiduciary Duty**

In their Motion to Dismiss, Defendants aver that the Court should dismiss Plaintiff's Third Claim for Relief for failure to state a claim upon which relief can be granted. Upon review of the record and the Plaintiff's Complaint, the Court concludes that Plaintiff's Third Claim for Relief should be dismissed.

In the Third Claim for Relief, Plaintiff asserts a claim for breach of fiduciary duty. Plaintiff has failed to allege sufficient facts, however, to demonstrate that either the Ervin Brothers or Ervin Group owed a fiduciary duty to Plaintiff at the time of the alleged breach. In Nebraska, "[a] director or other corporate officer cannot acquire an interest adverse to that of the corporation while acting for the corporation or when dealing individually with third persons. An officer or director of a corporation occupies a fiduciary relation toward the corporation and its stockholders and should refrain from all acts inconsistent with his or her corporate duties." *Bellino v. McGrath North Mullin & Kratz, PC LLO*, 274 Neb. 130, 144 (Neb. 2007)(internal citations omitted).

Yet under Nebraska law, only officers with management authority owe the corporation a fiduciary duty. *See Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 275 Neb. 642, 660-61 (Neb. 2008)("In Nebraska, an officer must comply with all applicable fiduciary duties when dealing with the corporation and its shareholders. Nominal corporate officers, with no management authority, generally do not owe fiduciary duties to the corporation. However, an officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of

law.")(internal quotations omitted). Plaintiff has failed to assert any facts demonstrating that Defendants held any management authority or participated in the management of Ervin & Smith.

While the Complaint states that "[t]he Ervin Brothers at times had served as officers of Ervin & Smith" (Filing No. 1 at ¶ 12), this allegation alone is not sufficient to substantiate Plaintiff's claim for breach of fiduciary duty. To establish a claim for breach of fiduciary duty, Plaintiff would also need to plead facts to show that Defendants were officers of the corporation *when* the alleged breach of duty occurred. *See Aon Consulting*, 275 Neb. 642, 662 (Neb. 2008)("We are more persuaded by decisions from other jurisdictions holding that the existence of a fiduciary duty of an officer in a closely held corporation depends on the ability to exercise the status which creates it. These courts conclude that when a corporate officer loses managerial responsibilities, the corresponding fiduciary duty ceases to exist.")(internal quotations omitted). From the face of the Complaint, Plaintiff has failed to state facts attesting to whether Defendants were still officers of the corporation at the time the alleged breach of duty occurred. Because, under Nebraska law, the "corresponding fiduciary duty ceases to exist" when an "officer loses managerial responsibilities," this omission by Plaintiff is fatal to Plaintiff's Third Claim for Relief.

Accordingly, the Court will grant Defendants' Motion to Dismiss Plaintiff's Third Claim for Relief.

### 2. Plaintiff's Fifth Claim for Relief: Unlawful Restraint of Trade

Defendants argue that the Court should dismiss Plaintiff's Fifth Claim for Relief. In the Complaint, Plaintiff asserts that Defendants' actions constitute an unlawful conspiracy in restraint of trade and/or commerce in violation of the Junkin Act. *See* Neb. Rev. Stat.

§59-801 (1943). In their Motion to Dismiss, Defendants aver Plaintiff has failed to allege facts sufficient to establish that Defendants had the requisite *intent* to carry out the unlawful restraint of trade. *See Hompes v. B. F. Goodrich Co.*, 288 N.W. 367, 373 (Neb. 1939)("The evidence as a whole must show by a preponderance, however, the *intent* of the alleged wrong doers to accomplish a result prohibited by the statute.")(emphasis added). Yet after reviewing the record and applicable law, the Court finds that Plaintiff has sufficiently pled facts to support the Complaint's Fifth Claim for Relief.

The Nebraska Supreme Court has evaluated claims for relief under Neb. Rev. Stat. §59-801, and has held that:

> A combination or conspiracy between two or more persons against any person, firm or corporation to damage or destroy the business of such person, firm or corporation, which is carried into effect, is a violation of the Junkin Act (Comp.St.1929, art. 8, ch. 59) and subjects such wrong doers to an action for damages.
>
> [A] conspiracy need not be established by direct evidence of the acts charged, but may, and generally must, be proved by a number of indefinite acts, conditions and circumstances, which vary according to the purposes to be accomplished. The evidence as a whole must show by a preponderance, however, the intent of the alleged wrong doers to accomplish a result prohibited by the statute.
>
> [W]hen the alleged overt acts are in themselves lawful, and the evidence does not tend to show an unlawful intent to conspire against and injure the business of another by stifling competition, the action must fail for want of proof.

*Id.* Defendants have interpreted the *Hompes* Court's interpretation of the statute to support their argument that Plaintiff's Complaint does not set out sufficient facts to establish that Defendants had the intent "to accomplish a result prohibited by the statute."

Defendants, however, have misconstrued the *Hompes* Court's application of the statute. Plaintiff's Complaint need not include allegations that Defendants had the requisite

7

intent, but rather, the Plaintiff must plead facts that "by a number of indefinite acts, conditions and circumstances . . . show by a preponderance [of the evidence] the intent of the alleged wrong doers to accomplish a result prohibited by the statute." *Id.* The question of intent is evidentiary in nature and, consequently, the Court must "look into the evidence bearing upon the question of intent." *Id.* at 372. "A conspiracy need not be established by direct evidence of the acts charged, but may, and generally must, be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purposes to be accomplished." *State ex rel. Douglas v. Associated Grocers of Neb. Co-op., Inc.*, 214 Neb. 79, 84 (Neb. 1983)(citing *Hompes*, 288 N.W. 367 (1939)).

Plaintiff has met its burden of establishing the requisite intent by a preponderance of the evidence. Plaintiff pled facts stating that the Ervin Brothers emailed confidential, trade secret documents from Ervin & Smith's computers to their home computers. (Filing No. 1 at ¶ 26). Plaintiff alleged that "[t]he Ervin Brothers and Ervin Group copied and modified Plaintiff's copyrighted work and are displaying such copyrighted work on the Ervin Group's website as the work of the Ervin Group and not Ervin & Smith." (Filing No. 1 at ¶ 26). Plaintiff further alleged that the Ervin Brothers, while still employed at Ervin & Smith, solicited Ervin & Smith's customers for their own business, Ervin Group, which now competes in the exact same business as Ervin & Smith. (Filing No. 1 at ¶ 27). Because "[t]he party alleging a conspiracy in restraint of trade does not have to show any overt act other than the act of conspiracy," (*Associated Grocers of Neb.,* 214 Neb. 79, 84 (Neb. 1983)), Plaintiff has alleged sufficient facts to establish Plaintiff's claim that Defendants engaged in a conspiracy and held the requisite intent to commit the unlawful act.

Defendant's Motion to dismiss Plaintiff's Fifth Claim for Relief will be denied.

### 3. Plaintiff's Sixth Claim for Relief: Neb. Rev. Stat. § 20-148.

In their Motion to Dismiss, Defendants suggest that Plaintiff has failed to plead facts that establish a cognizable claim under Neb. Rev. Stat. § 20-148.  The Court concurs and concludes that Plaintiff's Sixth Claim for Relief should be dismissed.

In the Complaint, Plaintiff asserts a claim under Neb. Reb. Stat § 20-148, which in part states:

> Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

Thus, Plaintiff alleges that Defendants caused Plaintiff to suffer a deprivation of a "right . . . secured by . . . [the] laws of the State of Nebraska."  The Supreme Court of Nebraska, however, has held that Neb. Reb. Stat § 20-148 "is a procedural statute which does not create any new substantive rights. *Goolsby v. Anderson*, 250 Neb. 306, 313 (Neb. 1996). " In order to establish a claim under Neb. Reb. Stat § 20-148, Plaintiff must plead facts demonstrating a deprivation of a right secured to Plaintiff by either "the United States Constitution or the Constitution and laws of the State of Nebraska." *Id.*  Plaintiff's claim for relief fails to do so.

In the Complaint, Plaintiff asserts that Plaintiff has suffered a deprivation of a right because Defendants violated the following Nebraska statutes: Neb. Rev. Stat. §§ 28-1343.01, 28-1344, 28-1345, and 28-1347.  As these cited statutes are all *criminal* statutes, they do not afford the Plaintiff any *substantive rights.*  The legislative history behind the statute's enactment does not support the interpretation that Neb. Reb. Stat §

9

20-148 creates a right and a cause of action for any victim of a crime made punishable under a Nebraska criminal statute. Instead, the Nebraska Supreme Court has held that "it is clear that the purpose of § 20-148 is to allow plaintiffs to enforce their constitutional and statutory rights in district court without first having exhausted statutory administrative remedies." *Goolsby*, 250 Neb. at 312. "The legislative history of § 20-148 indicates that the major focus of the statute was to wipe out private acts of discrimination by private employers . . . ." *Wiseman v. Keller*, 218 Neb. 717 (Neb. 1984)(citing Judiciary Committee Hearing, L.B. 66, 85th Leg., 1st Sess. (Jan. 18, 1977)). *See also Ritchie v. Walker Mfg. Co.*, 963 F.2d 1119, 1122 (8th Cir. 1992)("Section 20-148 does not create a civil remedy for conduct which would violate the concept or spirit of a constitutional or statutory provision but for the absence of a jurisdictional fact. Rather it provides a civil remedy for violations of constitutional or statutory right." ).

Because a violation of Nebraska's criminal statutes does not give rise to a civil cause of action, Plaintiff has failed to plead sufficient facts to substantiate a claim under Neb. Rev. Stat. § 20-148. Accordingly, the Court will grant Defendants' Motion to Dismiss Plaintiff's Sixth Claim for Relief.

### 4. Plaintiff's Ninth Claim for Relief: Deceptive Trade Practices

Defendants further contend that Plaintiff has failed to plead the claim for deceptive trade practices, under Neb. Rev. Stat. §§ 87-301-306, with sufficient particularity in satisfaction of the requirements of Fed. R. Civ. Pro. 9(b). The Court has reviewed the pleadings and applicable law and concludes that Plaintiff has pled facts with sufficient particularity to satisfy the heightened requirements of Fed. R. Civ. Pro. 9(b).

"Under Rule 9(b), a plaintiff must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *BJC Health Sys.,* 478 F.3d at 917(internal quotations omitted).  "In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." *Id.*

"Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading. Thus, the particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel. Costner*, 317 F.3d at 888 (8th Cir. 2003).  Therefore, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *BJC Health Sys.,* 478 F.3d at 917.

While Plaintiff argues that the standards of Fed. R. Civ. Pro. 9(b) do not apply to "'allegations of unfair and deceptive trade practices,'" (Filing No. 32 at 12 (quoting *Alpharma, Inc. v. PennField Oil Co.*, 2008 WL 2331019, *2 (D.Neb. Jun 4, 2008)), this argument is irrelevant as the Court has reviewed the Complaint and concludes that Plaintiff's pleading provides enough detail to survive a Fed. R. Civ. Pro. 9(b) challenge. From the face of the Complaint, it is clear that the pleadings "enable the defendant to respond specifically and quickly to potentially damaging allegations." *U.S. ex rel. Costner*, 317 F.3d at 888.

The Complaint contains detailed and specific allegations of unlawful conduct including Defendants' "use of pictures of Ervin & Smith's confidential and proprietary and copyrighted material on its website, promoting such copyrighted material as work of the Ervin Group, and using confusingly similar trade name the Ervin Group." (Filing No. 1 at ¶

88). These allegations are not simply conclusory, but rather, they set forth the who, what, when, and where of the alleged acts constituting deceptive trade practices.

Consequently, the Court will deny Defendants' Motion to Dismiss Plaintiff's Ninth Claim for Relief.

### 5. Plaintiff's Tenth Claim for Relief: Fraud

Defendants also contend that Plaintiff has failed to plead the claim for fraud with sufficient particularity to satisfy the requirements of Fed. R. Civ. Pro. 9(b). The Court has reviewed the pleadings and applicable law and concludes that Plaintiff has pled facts with sufficient particularity to satisfy the heightened requirements of Fed. R. Civ. Pro. 9(b). As stated above, Fed. R. Civ. Pro. 9(b) requires the Plaintiff to "identify the 'who, what, where, when, and how' of the alleged fraud." *BJC Health Sys.,* 478 F.3d at 917. It is clear from the face of the Complaint that Plaintiff has done so.

The Complaint clearly alleges the "who," as there can be no question that the Defendants, specifically the Ervin Brothers, are the individuals charged with the allegations of having committed fraudulent acts. Further, the Complaint is replete with examples of specific fraudulent acts Plaintiff alleges the Defendants committed. (*See, e.g.,* Filing No. 1 at ¶ 21 ("When Ervin & Smith directed the Former Employee Defendants to expand the customer contact with Golden Harvest Seeds, Inc., Lindsay Corporation; and Greenleaf Genetics LLC to include other employees of Ervin & Smith, the Former Employee Defendants deliberately refused and thwarted such efforts."); Filing No. 1 at ¶ 26 ("During the months prior to their resignation, the Ervin Brothers e-mailed to their home computer, for their personal and competitive purposes, confidential and Trade Secret documents and copyrighted documents belonging to Ervin & Smith, and on information and belief, removed

other documents containing confidential and trade secret information. The Ervin Brothers further concealed from Ervin & Smith job orders from customers, which they then diverted to Ervin Group to fill after they resigned their employment.").

The Court finds that these pleadings "enable the defendant to respond specifically and quickly to potentially damaging allegations." *U.S. ex rel. Costner*, 317 F.3d at 888. Accordingly, Defendants' Motion to Dismiss Plaintiff's Tenth Claim for Relief will be denied.

### 6. Plaintiff's Twelfth Claim for Relief: Computer Fraud and Abuse

Plaintiff likewise has succeeded in stating a claim upon which relief can be granted for its claim brought under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq.* "The CFAA criminalizes various fraudulent or damaging activities related to the use of computers." *Fiber Sys. Intern., Inc. v. Roehrs*, 470 F.3d 1150, 1156 (5th Cir. 2006). Section 1030(g) of the CFAA allows "[a]ny person who suffers damage or loss by reason of a violation of this section [to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Plaintiff's allegations essentially come within the purview of sections 1030(a)(4)[2] and (a)(5)(A)[3] of the Act.

---

[2] Section (a)(4) states a violation has occurred when an individual who: "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

[3] Section (a)(5)(A) states a violation has occurred when an individual: "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or (C) intentionally accesses a protected

Defendants contend, however, that because Defendants were employees at the time they allegedly accessed Plaintiff's computers, they had "authorization" and thus did not access the computers "without authorization" or in excess of "authorized access" as is required by the statute to establish a violation.  They argue that because Plaintiffs cannot show that Defendants didn't have the authority to access the information they allegedly appropriated from Plaintiff, the Plaintiff's CFAA claim must fail.

While the Eighth Circuit Court of Appeals has not directly addressed this issue, many courts have interpreted § 1030(a)(4) to permit an employer's claim against an employee who accesses information he is ordinarily authorized to access when the alleged act is committed "in violation of the duty of loyalty that agency law imposes on [the] employee." *Int'l Airport Ctrs., L.L.C. v. Citrin* 440 F.3d 418, 420 (7th Cir. 2006)("For his authorization to access the laptop terminated when, having already engaged in misconduct and decided to quit [his job] in violation of his employment contract, he resolved to destroy files that incriminated himself and other files that were also the property of his employer, in violation of the duty of loyalty that agency law imposes on an employee.)".[4]  This Court concludes

---

computer without authorization, and as a result of such conduct, causes damage and loss." 18 U.S.C. § 1030(a)(5)(A).

[4] *See also Nilfis-Advance, Inc. v. Mitchell*, 2006 WL 827073, at *2 (W.D. Ark., Mar. 28, 2006)(finding that Defendant "exceeded any authorization he had when he e-mailed the files to his personal computer with the alleged purpose of misappropriating the information contained in them. "); *Personalized Brokerage Servs., LLC v. Lucius*, 2006 WL 208781, at *2 (D.Minn., Jan. 26, 2006)("An employee who exceeds authorized access to an employer's computer may violate the CFAA."); *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121, 1125 (W.D. Wash. 2000)("Under this rule, the authority of the plaintiff's former employees ended when they allegedly became agents of the defendant.

that while the Defendants ordinarily may have been authorized to access the information they appropriated from Plaintiff, that authorization was terminated when Defendants destroyed the agency relationship by accessing and appropriating the protected information for their own personal gain and against the interest of their employer.

Furthermore, the Confidential Agreement in the Ervin & Smith Employee Handbook supports Plaintiff's contention that Defendants were only authorized to access this protected information so long as they abided by the agreed-upon terms found within the Handbook. (*See* Filing No. 1 at ¶ 16). In the Handbook, Defendants were instructed that they would have access to Plaintiff's protected information so long as they did not "use, directly or indirectly, any confidential information for [their own] or any third party's benefit." (*See* Filing No. 1 at ¶ 16). Consequently, the Court concludes that Defendants never had authorization to access Plaintiff's protected information to further their own business interests. Instead, when Defendants allegedly violated the Confidential Agreement and allegedly appropriated Plaintiff's secret information for their own private benefit, they exceeded their "authorized access." *See EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 582 (1st Cir. 2001)(concluding that Plaintiff "is likely to prove such excessive access based on the confidentiality agreement between [Defendant] and [Plaintiff]."). As a result, Plaintiff has sufficiently pled facts to establish its claim that Defendants violated 18 U.S.C. § 1030.

---

Therefore, for the purposes of this 12(b)(6) motion, they lost their authorization and were 'without authorization' when they allegedly obtained and sent the proprietary information to the defendant via e-mail.")(citing Restatement (Second) of Agency § 112 (1958)).

15

In their Motion to Dismiss, Defendants also contend that Plaintiff's Complaint fails to plead the jurisdictional amount of loss required by 18 U.S.C. §1030(c)(4)(A)(i)(I). Specifically, that section requires a Plaintiff to plead "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value" in order to establish a CFAA claim. 18 U.S.C. §1030(c)(4)(A)(i)(I).  Although Plaintiff has pled "losses that are difficult, if not impossible, to quantify, but amount to at least $5,000" (Filing No. 1 at ¶ 110), Defendants suggest this does not satisfy the required pleading because Plaintiff did not specify that its losses resulted from "response costs or revenue due to an interruption of service." (Filing No. 26 at 14).  Specifically, Defendants argue that Plaintiff cannot recover any loss of business or revenue Plaintiff incurred as a result of Defendants' actions because § 1030(g)'s limitation on recovery to "economic damages" and the statute's definition of "loss" allow for recovery of the physical damage done to Plaintiff's computer system only.[5]

Defendants' interpretation of what constitutes "economic damages" and/or "loss" under the statute is flawed.  While Defendants object to paying damages for loss of business, this "objection is without force because [loss of business constitutes] economic damages." *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004)("When an individual or firm's money or property are impaired in value, or money or

---

[5] Defendants cite to the statute's definition of loss, where the CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).  It is Defendants' contention that any revenue lost outside of restoring computer service or data lost is not recoverable under the Act.

16

property is lost, or money must be spent to restore or maintain some aspect of a business affected by a violation, those are 'economic damages.'").

Furthermore, should the Court adopt the Defendants' reasoning and limit recovery under the CFAA to those instances in which a Plaintiff can demonstrate actual, physical damage to a computer or computer system, this Court's ruling "would flout Congress's intent" in creating the CFAA. *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 585 (1st Cir. 2001). "As we move into an increasingly electronic world, the instances of physical damage will likely be fewer while the value to the victim of what has been stolen and the victim's costs in shoring up its security features undoubtedly will loom ever-larger. If we were to restrict the statute as [Defendants] urge, we would flout Congress's intent by effectively permitting the CFAA to languish in the twentieth century, as violators of the Act move into the twenty-first century and beyond." *Id.* In a time when most computer crimes result in loss of revenue and little to no physical damage, it is nonsensical to conclude that Congress did not intend to create a remedy for circumstances such as those the Plaintiff has pled in this matter.

Instead, this Court concludes that Plaintiff has pled sufficient facts to establish damages of at least $5,000, satisfying §1030(c)(4)(A)(i)(I)'s jurisdictional amount. Defendants' Motion to Dismiss Plaintiff's Twelfth Claim for Relief will be denied.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss is granted in part and denied in part. Accordingly,

IT IS ORDERED:

1. Defendants' Motion to Dismiss (Filing No. 25) is granted in part and denied in part, as follows:

    A.. Plaintiff's Third Claim for Relief is dismissed (as to Defendants Thomas Ervin, William Ervin, and BTM, Inc., only) with prejudice;

    B. Plaintiff's Sixth Claim for Relief is dismissed (as to Defendants Thomas Ervin, William Ervin, and BTM, Inc., only) with prejudice; and

    C. Defendants' Motion to Dismiss is otherwise denied.

2. The Defendants, Thomas Ervin, William Ervin, and BTM, Inc., will respond to the remaining claims in the Plaintiff's Complaint on or before February 26, 2009.

DATED this 3rd day of February, 2009.

                                          BY THE COURT:

                                          s/Laurie Smith Camp
                                          United States District Judge